**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


STEVE BRACKETT, KEVIN MURPHY,
DARIUSZ KEPCZYNSKI and BRUCE HARVEY,

     Plaintiffs,

                              Civil Action No. 2:09-cv-10048

v.

                              HON. DENISE PAGE HOOD

SIEMENS VDO AUTOMOTIVE
CORPORATION, SIEMENS VDO
CORPORATION and CONTINENTAL
AUTOMOTIVE SYSTEMS US, INCORPORATED,

     Defendants.

_____/


**FINDINGS OF FACTS AND CONCLUSIONS OF LAW**


**I.    JURISDICTION AND INTRODUCTION**

This matter was removed to the United States District Court for the Eastern District of Michigan on January 7, 2009, on the basis of this Court's federal question jurisdiction. 28 U.S.C. § 1331 and §§ 1441, 1446. The Complaint, originally filed in the State of Michigan Circuit Court for the County of Oakland, alleged two counts: Count I, Breach of Contract, and Count II, Violation of ERISA. Count I was dismissed by the Court prior to trial. A trial of this matter before the bench was

1

held.   The Plaintiffs herein seek severance pay benefits under the Siemens VDO Automotive Corporation's ("SVAC's") Severance Pay Plan ("Severance Plan") (Exh. D-1).   The Severance Plan is a welfare benefit plan under ERISA.   The Plaintiffs claim a violation of ERISA for SVAC's failure to pay these benefits. SVAC denied payment claiming that the Plaintiffs are not entitled to these benefits under the Severance Plan:   Plaintiff Harvey because he voluntarily retired; Plaintiffs Brackett, Kepczynski and Murphy because they were offered and accepted "substantially comparable employment" "immediately following the divestiture" of the business unit in which they were employed, pursuant to the Severance Plan. These are the findings of fact and conclusions of law of the court pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## II.   FINDINGS OF FACT

### A.   The Parties

In this case, four plaintiffs, Steve Brackett, Kevin Murphy, Dariusz Kepczynski and Bruce Harvey, seek severance benefits from Defendants Siemens VDO Automotive Corporation ("SVAC") and Siemens VDO Corporation ("SVI") (known now as Continental Automotive Systems US, Incorporated) pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 *et seq*.   SVAC is a United States corporation and SVI is a Canadian corporation.   The

parent company for these entities was Siemens AG, a German corporation. SVAC and SVI were separate companies, sold by Siemens AG to Continental Automotive Systems US, Inc. in December 2008. Plaintiffs Brackett, Murphy and Kepczynski were full-time employees of SVAC working in the PAF Unit, until May 31, 2007. Plaintiff Harvey was also a full-time employee of SVAC working in the PAF Unit until his retirement date, March 31, 2007.

All four Plaintiffs were employed by SVAC, located in Auburn Hills, Michigan. SVAC as noted is a subsidiary of Siemens AG, a German corporation. Plaintiffs worked in a Business Unit of Siemens AG called Power Train AM AF, but commonly referred to as PAF. This Business Unit dealt with motor vehicle air intake modules and air induction systems. The PAF Business Unit was sold to Mahle GmbH ("Mahle") in May 31, 2007. Plaintiffs, in various ways, inquired about severance benefits, but Defendants denied Plaintiffs' request for severance benefits.

### B. The Plan

SVAC had an established Severance Pay Plan. It is undisputed that this Severance Plan was subject to ERISA. Each Plaintiff had a copy of the Severance Plan. Under the Severance Plan an employee was entitled to certain benefits upon the occurrence of certain events. The Severance Plan provides in pertinent part:

I.     <u>About the Plan</u>

1.1     This Severance Pay Plan (the "Plan") of Siemens VDO Automotive Corporation ("SVAC") has been established to provide specified severance pay and benefits to all regular, non-bargaining unit, United States salaried employees of SVAC.

\*   \*   \*

1.3     The Plan is administered by the Siemens VDO Automotive Corporation Severance Pay Plan Committee (the "Committee"). The Committee has full and final authority to administer, interpret and construe the Plan and to determine whether severance pay and benefits are payable under the Plan.

\*   \*   \*

II.     <u>Eligibility</u>

\*   \*   \*

2.2     Subject to section 2.3 below, severance pay will be granted to eligible employees of SVAC whose termination is permanent and initiated by SVAC as a result of any one of the following "Qualifying Events":

\*   \*   \*

b)     Elimination of the employee's position, unless the employee has rejected a comparable position within SVAC or an affiliated unit or Company of Siemens, as described in Section 2.3(e) below.

\*   \*   \*

d)     A separation for the convenience of SVAC for

business or other reasons.

\* \* \*

2.3 An eligible employee will not be entitled to severance pay under this Plan if the employee's termination is the result of:

\* \* \*

c) The employee's retirement (except that an employee who is to be terminated due to a Qualifying Event and who elects to retire under a retirement plan of SVAC shall be granted severance pay, nonetheless);

d) The divestiture of a business unit of SVAC, or the sale of the stock or asset of SVAC or a business unit or subsidiary of SVAC, if the employee continues or is offered substantially comparable employment with the new employer immediately following the divestiture;

\* \* \*

III. Severance Pay for Qualifying Terminations

3.1 An eligible employee who is terminated as a result of a Qualifying Event shall receive Basic Severance Pay as provided under the following schedule. …

\* \* \*

V. Administration of the Plan

5.1 This Plan is a welfare plan under the Employee Retirement Income Security Act of 1974 ("ERISA") and benefits are paid from the assets of SVAC.

    5.2    SVAC is the Named Fiduciary and Sponsor of this Plan. The Plan Administrator is the Siemens VDO Automotive Corporation Severance Pay Plan Committee, comprised of no less than three members who shall be appointed by the Plan Sponsor. All benefits payable under this Plan are unfunded and paid solely from the general assets of SVAC.

    5.3    The Committee has the sole right and authority to determine eligibility for benefits under the Plan and to construe the Plan's terms.

    5.4    Any employee or former employee for whom no benefits have been authorized may appeal the decision to the Committee in writing, within 60 days of receiving such notice, requesting the Committee to review and reconsider its determination. The Committee shall give the employee notice of its decision. The decision of the Committee to this appeal shall be final.

(Exhs. P-1 & D-1, SVAC Severance Pay Plan)

It is not disputed that all Plaintiffs were regular employees of SVAC subject to the Severance Plan. It is undisputed that each Plaintiff had a copy or access to a copy of the Plan Document and Summary Description. (Exh. D-1)

**C.    The Plaintiffs' Positions at SVAC**

Steve Brackett began as a Product Engineer at Bendix in 1986. Bendix became Siemens VDO in the early 2000s. In 2004, Brackett became the Director of Engineering VDO Automotive with global responsibility. He was an employee of

SVAC. His office was in Auburn Hills, Michigan although he often worked in Canada. After the sale of SVAC to Mahle, he became the Director of Engineering NAFTA for Mahle; essentially the same job responsibilities with regard to the same products. Brackett was involved in the due diligence for the sale of SVAC to Mahle.

Kevin Murphy was employed by Bendix in1987. Bendix was acquired by Allied and then by SVAC. Following the purchase by SVAC, Murphy transferred to Auburn Hills, Michigan and he became part of the PAF as a Product Engineer and Program Leader in 1994. He took over Harvey's position when Harvey retired. Murphy was offered a job with Mahle.

Dariusz Kepczynski began at Siemens Automotive in 1998 in the sales group for PAF Product Group. He was eventually employed as an Account Manager for SVAC. He had his office in Auburn Hills, Michigan. Kepczynski spent about one-third of his time in Canada. He worked with Brackett's group. Kepczynski was offered and accepted a position with Mahle.

Bruce Harvey also started at Bendix, but in 1970. Bendix was acquired by Allied and then by SVAC. Eventually his office was located in Auburn Hills, Michigan. Harvey described himself as two levels down from Brackett when Brackett became Director of Engineering at SVAC. Harvey retired from SVAC effective April 1, 2007 prior to the final sale of SVAC to Mahle. He never received

an offer from Mahle because of his retirement.

### D.     The Sale

In May 2006, SVAC and Mahle began exploring the "synergies" for the two companies to work jointly or to combine in some fashion.    Each had market strength in certain areas of the global market.    In June 2006, Mahle expressed its interest in purchasing the PAF assets of Siemens VDO.    The sale was effective May 31, 2007.

## III.   CONCLUSIONS OF LAW

### A.     Standard of Review

Section 1132 is the civil enforcement provision of ERISA which states, "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."   29 U.S.C. § 1132(a)(1)(B).   A denial of benefits under an ERISA plan "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."   *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103, 115 (1989).   *De novo* review is limited to the record before the administrator.   The court must determine whether the administrator "properly interpreted the plan and

whether the insured was entitled to benefits under the plan." *Hoover v. Provident Life and Acc. Ins. Co.,* 290 F.3d 801, 809 (6th Cir. 2002).

In *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998), pursuant to a majority decision, the panel set forth "Suggested Guidelines" to adjudicate ERISA actions. The Sixth Circuit stated that the Rule 56 Summary Judgment procedure is "inapposite to the adjudication of an ERISA action" because of the Circuit's "precedents [which] preclude an ERISA action from being heard by the district court as a regular bench trial." *Wilkins*, 150 F.3d at 619. "[I]t makes little sense to deal with such an action by engaging a procedure designed solely to determine 'whether there is a genuine issue for trial.'" *Id.* The district court should use neither the summary judgment nor the bench trial procedures in deciding ERISA actions. *Id.* at 620. As to the merits of the case, the district court should conduct a review based solely upon the administrative record and render findings of fact and conclusions of law. *Id.* at 619. If a procedural challenge is alleged, such as lack of due process afforded by the administrator or bias on its part, only then may the district court consider evidence outside of the administrative record. *Id.* The discovery phase in an ERISA action will only cover the exchange of administrative record, and, if there is a procedural due process claim against the administrator, discovery is limited to evidence related to procedural challenges. *Id.*

The parties agree that this Court has jurisdiction under ERISA. (Doc. No. 37, JFPTO, PageID.475) Normally, such a case would be decided on the administrative record as set forth above. In this instance, the Court in denying the parties' cross-motions for summary judgment, found that there remained genuine issues of material fact whether PAF was a business unit of SVAC and whether SVAC possessed any assets of PAF that were sold to Mahle. (Doc. No. 31, Order, PageID.469) Plaintiffs allege that Defendants breached the fiduciary and other duties imposed upon them as Plan Administrators under ERISA.

**B.      Exhaustion of Administrative Remedies**

Defendants claim that Plaintiffs failed to exhaust their administrative remedies under ERISA and the Severance Plan. The Severance Plan contains an administrative review process which is required by ERISA. (Exh. D-1, § 5.4) Under ERISA, the exhaustion of administrative remedies is required prior to the commencement of a suit to recover benefits claimed due under an employee welfare benefit plan. *Baxter v. C.A. Muer Corporation*, 941 F.2d 451, 453 (6th 1991). Defendants argue that Plaintiff Harvey never requested benefits prior to the filing of this lawsuit and never pursued any administrative remedies. There is no dispute that Harvey never specifically requested Severance Pay and never pursued any administrative remedy, having received no severance benefits. Subsequent to his

retirement in March 2007, Harvey consulted with an attorney regarding his rights under the Severance Plan. Harvey filed this lawsuit, but otherwise made no request for Severance Plan payments. He sought no administrative remedy after Defendants failed to pay as a result of the filing of the lawsuit.

Defendants claim Plaintiffs Brackett, Murphy and Kepczynski made no request for severance benefits under the Severance Plan. However, Brackett testified he made verbal inquiries and Murphy testified he had sent an email. Defendants note that none of the Plaintiffs presented their offers from Mahle to SVAC, claiming that their offers of employment from Mahle were not "substantially comparable" to their SVAC employment thereby triggering the payment of severance benefits from SVAC. Defendants assert this is especially true of Plaintiff Brackett who testified that he was "satisfied" with the compensation level offered by Mahle and even when dissatisfied with his discretionary bonus, made no claim that his Mahle employment package was not comparable. All met with counsel in 2007 raising the issue of severance pay but took no action until filing this lawsuit. Plaintiff Brackett brought to the meeting with counsel a copy of an e-mail from Fred Roth to Julie Benton regarding severance pay but made no request for severance pay at that time.

It is undisputed that no Plaintiff followed the administrative appeal procedure

set forth in the Severance Plan. Defendants claim this precludes Plaintiffs from seeking the judicial review pursued in this lawsuit. *See, Id*.; *Moffitt v Whittle Communications,* 895 F. Supp. 961 (E.D. Tenn. 1995*); Graham v Federal Express Corp.*, 725 F. Supp. 429 (W.D. Arkansas 1989).

Plaintiffs assert that the Severance Plan does not require that administrative remedies be exhausted. They claim that Defendants' reliance on § 5.4 is misplaced. Plaintiffs claim that § 5.4 is "permissive" because it states, "[a]ny employee or former employee for whom no benefits have been authorized *may* appeal the decision to the Committee in writing, within 60 days of receiving such notice, requesting the Committee to review and reconsider its determination." (Emphasis added) Plaintiffs further assert that § 7.1(c ) provides to employees certain rights if a claim for benefits is denied or ignored, including "to appeal any denial, all within certain time schedules. ... If you have a claim for benefits which is denied or ignored ... you may file suit in a state or federal court. ..." (Exh. D-1)

Plaintiffs claim two other reasons exhaustion is not required. First, they claim that even if exhaustion is required by the Severance Plan the undisputed facts of this case excuse such exhaustion, citing 29 C.F.R. § 2560.503-1(1). This regulation provides that if the Plan Administrator fails to establish or follow claims procedures required by ERISA, including the failure to provide written notice of a

denial of benefits, employees "shall be deemed to have exhausted the administrative remedies available under the plan." It is undisputed that SVAC provided no written notice of denial of benefits. It is also undisputed that three Plaintiffs made no written request for severance pay benefits, although they claim that no written request was required. The Court notes there is no provision in the Plan requiring a written request for severance pay benefits. Plaintiffs did not appeal in writing to the Severance Plan Committee for reconsideration of any verbal denial of benefits.

In any event, Plaintiffs assert that the Court should reject Defendants' argument because any attempt to exhaust administrative remedies would have been futile; such determination of futility being within the sound discretion of the court. *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998). The standard for determining whether exhaustion is futile is whether the employee can show there is a clear and positive indication of futility, not mere doubt. *Id*. Plaintiffs claim they have shown such futility, citing SVAC's inconsistent positions relative to the payment of severance throughout this dispute: Roth's email to Julie Benton of Human Resources indicating the Plaintiffs would be entitled to benefits under the Severance Plan; failure to respond to Plaintiff Harvey's request for information; no written denial was ever issued; the failure to identify the Administrative Committee members under the Severance Plan; failure to clearly

identify the decision maker regarding either the denial or interpretation of the Severance Plan; failure to notify Plaintiffs of the right to appeal; ignoring Plaintiff Murphy's e-mail request to Julie Benton for benefits.

Defendants argue that the use of the term "may", in the language of the Severance Plan does not excuse exhaustion, citing *Garst v. Walmart Stores, Inc.*, Case No. 00-5951, 2002 U.S. App. LEXIS 4248 (6th Cir. March 12, 2002), *Baxter v. C.A. Muer Corp*, 941 F.2d 451, 453-54 (6th Cir. 1991), and *Wert v. Liberty Life Assur. Co. of Boston*, 447 F.3d 1060 (8th Cir. 2006). Defendants also argue there are only two exceptions to the prerequisite to exhaust: when a plaintiff challenges the legality of the plan, not just interpretation; and when defendant lacks authority to institute the decision plaintiff seeks. *See Constantino v. TRW, Inc.,* 13 F.3d 969, 975 (6th Cir. 1994); *Hill v. BCBS of Michigan*, 409 F.3d 710, 719 (6th Cir. 2005). Defendants contend that Plaintiffs have shown neither exception in this case.

The Sixth Circuit has ruled that exhausting administrative remedies is improper where exhausting administrative remedies would amount to an exercise in futility. *Hill,* 409 F.3d at 718. "We have recognized a general exception to the exhaustion requirement for ERISA claims when the remedy obtainable through administrative remedies would be inadequate or the denial of the beneficiary's claim is so certain as to make exhaustion futile." *Id.* at 718-19. Allegations that a Plan's

interest is aligned with the employer, not the beneficiaries, and failure to follow the Plan provisions in handling the claims, may support excusing exhaustion of administrative remedies. *Id.* at 719.

The Court finds that Plaintiff Murphy clearly made a request for severance pay in an email to Julie Benton, dated May 31, 2007. In this email, Murphy claims that the terms of his employment with Mahle are not comparable to those of his current position with Siemens VDO and that he expects severance pay from SVAC. Plaintiff Murphy's email to Attorney Jeffrey Bullard includes a copy of the email to Benton and states that he never received any response from Benton. Each Plaintiff in Answers to Interrogatories denied that they had not requested benefits.

The Court finds that exhaustion of administrative remedies would have been futile in this case. Testimony at trial was unclear about who were the members of the Committee for the Severance Plan; there was a failure to give written notice that no severance would be paid; there was a failure to notify of appeal; and, there was a failure to clearly identify the ultimate decision maker on the issue of severance pay. The Plan provides that if claim for benefits is denied or ignored, the employee may file suit in a state or federal court. (Exh. D-1, § 7.1(c)) The Court finds that on the issue of severance pay, the exhaustion of administrative remedies would have been futile.

## C. Whether PAF was a business unit of SVAC

The sale of PAF global assets in May 2007 is documented in the Master Purchase Agreement between Siemens AG and Mahle. SVAC and SVI are listed as "asset sellers" in the Master Purchase agreement. SVAC is also listed as the "Selling Siemens Legal Entity." The assets being sold included equipment, inventory and accounts receivable located at the Grundy facility in Iowa. Supplier contracts related to the PAF business were also conveyed. Siemens and Mahle had also agreed that because of Mahle's limited personnel resources in North America, PAF employees would be "transferred" to Mahle. Neither Plaintiff nor Defendants point to any authority for such a "transfer," but it is clear that Mahle was interested in keeping "vital" employees of PAF. The Court finds that the Asset Sale and Transfer Agreement of May 2007, Section 5, clearly indicates that offers of employment will be made "immediately after the Effective Time" subject to the closing of the deal. This offer was made to "Business Employees" of the seller listed on an exhibit attached to the Asset Sale And Transfer Agreement. The Plaintiffs were listed on that exhibit. This is not inconsistent with Plaintiff Brackett's testimony regarding the due diligence and questions and issues raised during that time about employees considered by SVAC and Mahle to be vital to the ongoing operation of the PAF business. The cost and value of these employees was the subject of his

testimony. Section 5, however, supports Defendants' position that the Plaintiffs were immediately offered employment by Mahle. Whether that employment was substantially comparable such as to preclude severance pay under the Severance Plan is addressed later in this decision.

Much was made at trial about whether any asset of SVAC was sold as a part of the Mahle acquisition of the PAF business. Plaintiffs argued that PAF was not a subsidiary of or business unit of SVAC. Plaintiffs claim that only assets of SVI or Siemens AG were part of the sale to Mahle. There appears to have been much inter-corporate activity among these entities. Starting with the undisputed fact that the Plaintiffs were employed by SVAC but worked for the PAF business. Defendants in fact claim that the PAF business unit was owned by SVAC and PAF was SVAC's asset. The Asset Sale and Transfer Agreement is signed by SVAC as "Seller." The Grundy, Iowa job with General Motors is noted as an asset of SVAC that was sold in the Mahle deal. Plaintiffs claim the sale of the Grundy assets was too minuscule to thwart their receipt of severance benefits under the Severance Plan. However, nothing in the Severance Plan requires that the dollar value of the asset sold be significant. Section 2.3 of the Severance Plan only requires "divestiture of a business unit of SVAC, or the sale of the stock or *asset of SVAC* or a business unit or subsidiary of SVAC." (Severance Plan, Section 2.3 (emphasis added))  Although

Plaintiff Brackett's testimony tracks most of the assets, it does not support the Plaintiff's claim that no assets of SVAC were part of the sale to Mahle.

### D. Offer of Comparable Work

Defendants claim that Plaintiffs were offered substantially comparable employment and benefits at Mahle. Defendants further claim the Plan provided that eligible employees were not entitled to severance if the termination resulted from,

> d) The divesture of a business unit of SVAC, or the sale of the stock or asset of SVAC or a business Unit or subsidiary of SVAC, if the employee continues or is offered substantially comparable employment with the new employer immediately following the divesture. (Exh. D-1, page 4)

Defendants argue that the sale to Mahler concluded May 31, 2007 and that Plaintiffs Brackett, Kepczynski and Murphy were offered the same employment position, job title and salary at Mahle. Defendants assert that these Plaintiffs accepted the position on June 1, 2007. Defendants also claim that similar employment benefits were offered to these Plaintiffs.

Courts have found employment that includes the same or similar job duties, base salary and benefit packages "substantially comparable" under ERISA. *Boss v. Advanstar Communs.*, 911 F. Supp. 109, 112 (S.D. N.Y. 1995); *Blessing v. J.P. Morgan Chase & Co.*, 394 F. Supp. 2d 569 (S.D. N.Y. 2005); *Jessup v. Alcoa, Inc.*, 481 F.3d 1004, 1007-08 (8th Cir. 2007). Specifically relying on *Boss*, the court in

*Kossig v. Timken*, 2007 U.S. Dist. LEXIS 48718; 42 Employee Benefits Cas. (BNA) 1334 (Conn. D. Ct. 2007), held reasonably comparable: slightly higher salary; less match on 401(k); less vacation time; fewer health benefits with higher premiums; elimination of seniority and severance benefits. The court in that case determined the plaintiffs should not be awarded severance benefits. *Id.* at *29. Defendants in this case claim that taken as a whole the Mahle offers to Plaintiffs were "substantially comparable."

Plaintiffs claim that they did not receive comparable employment at Mahle which thereby disqualified them from severance benefits. Plaintiffs first argue that the Plan does not speak to employment outside of SVAC or another unit of Siemens. And if outside the Plan, the decision of whether such employment and benefits are comparable does not rest with an employer other than SVAC or another unit of Siemens.

The Court finds that the Plan anticipates a determination of "substantially comparable employment" by the Severance Plan Committee based on the express language in § 5.3 of the Plan which states that "[t]he Committee has the sole right and authority to determine the eligibility for benefits under the Plan and to construe the Plan's terms." The Plan in § 2.3(d) provides that an eligible employee is not entitled to severance pay under the Plan if the employee "is offered substantially

comparable employment with the new employer *immediately following the divestiture*." (Exh. D-1, §2.3(d) (emphasis added))

Plaintiffs, consistent with their position that Mahle wanted employees to become employees of Mahle, ask the Court to consider that the offers of employment were "last minute" and designed to force employees into employment by Mahle and make them ineligible to seek other positions within a Siemens' unit. Plaintiffs however, cite no case law to support a claim that this is a consideration in determining whether the employment and fringe benefits offered were "substantially similar."[1] The Plan language in fact provides that the offer by the new employer be made "immediately following the divestiture." Plaintiffs' argument that the offers of employment were "last minute" and designed to force employees into employment by Mahle instead of being able to seek other positions within Siemens fails to establish that they are entitled to severance pay because the Plan language expressly states that such offer by the new employer be made *after* the sale of any asset or unit.

Plaintiffs presented testimony to support their claim that the employment and benefits offers were not comparable and therefore they are entitled to severance. The evidence shows that Plaintiff Brackett's base compensation was the same as his

---

1 The Court understands that this argument is also used to support Plaintiffs' claim of SVAC and Siemens malfeasance in the sale to Mahle.

prior compensation. He performed the same duties at Mahle. His pension, bonuses and other compensation were also substantially comparable. While at SVAC, Brackett received matching pension contributions. Mahle provided no such matching and in fact had no pension plan. Instead, Mahle offered a 401K plan with an employer match. Plaintiffs claim SVAC also had such a plan. Brackett had "cashed out" his pension from SVAC soon after he was employed by Mahle as that pension plan had vested. The bonus program parameters at Mahle were similar to those at SVAC. The projected bonus from SVAC in 2006 was a little over $49,000. The projected bonus from Mahle in 2007 were between $37,000 and $61,000. Mahle, however, did not pay a bonus in 2007, based on what Mahle claimed were negative year-end financial results. Brackett claimed he had no stock options at Mahle.

|                      | SVAC                    | MAHLE                          |
|----------------------|-------------------------|--------------------------------|
| Salary/Compensation  | Same                    | Same                           |
| Pension              | Yes; SVAC contribution  | No; 401K w/Mahle matching      |
| Health/Dental Ins.   | Employee contribution   | No cost to employee            |
| Insurance            | Same                    | Same                           |
| Bonus                | Not paid/same calculation | Same                         |
| Short Term Disability | Same                   | Same                           |
| Long Term Disability | No cost to employee     | Employee contribution/optional |
| Stock Options        | Yes; 12,000             | None                           |

Kevin Murphy also received the same salary under his agreement with Mahle. He performed the same duties at Mahle. He reported to the same supervisors. His bonus calculation was based on the same company performance as at SVAC. He did not receive a bonus for 2006-2007 based on negative year-end results. Murphy testified that his medical and dental benefits at Mahle were at no cost and that at SVAC an employee contribution was required. Both Mahle and SVAC provided life insurance benefits at two times base salary. The benefit for short term disability was the same at both companies. SVAC had provided long term disability at no cost, while Mahle provided an optional long-term disability benefit at the

employee's cost. The pension benefits were the same as Brackett has noted. Murphy noted that the annual cost of his employee benefits was $2,849.20, noting that his cost at Mahle was less because of the long-term disability benefit.

Darius Kepczynski accepted a position at Mahle with the same base salary. Like Brackett and Murphy, the discretionary bonus was on company performance. He describes the benefits package similarly to Brackett and Murphy, noting the cost of his benefits was $2,663.27, less than at SVAC because of the long-term disability.

As noted above, several courts have found that where job duties, base salaries and similar benefit packages were substantially similar, that constituted comparable employment under ERISA as a matter of law. It is clear that "substantially comparable" does not require benefits to be "equal" or even the same. The Court finds that the salary, job duties and benefits received by Plaintiffs Brackett, Murphy and Kepczynski at Mahle were substantially comparable. The differences are not necessarily calculated by the dollar amount of the benefits. Even so, two Plaintiffs concluded that the dollar difference was driven by the cost of long-term disability. The Court would note that some cost was likely driven by the Mahle offering of a 401K plan rather than a "pension" plan but taken as a whole the benefits were sufficiently "substantially comparable" to preclude the payment of severance to Plaintiffs by Defendants.

### E.    Plaintiff Harvey

Plaintiff Harvey claims entitlement to severance benefits because his position was eliminated permanently by SVAC.   Plaintiff Harvey argues that because everyone was told their positions at SVAC would be eliminated as a result of the sale to Mahle, he retired and therefore qualifies for severance pay under §2.2(b) of the Severance Plan.   Defendants claim that Plaintiff Harvey is not entitled to any severance benefits because of his voluntary retirement on April 1, 2007 under Paragraph 2.3(c) of the Plan.

Plaintiff Harvey was employed by SVAC as an engineer at the Auburn Hills office. He testified that there were rumors of the sale to Mahle even before January 2007. Plaintiff Harvey began to consider retirement after the January 2007 meeting. He had worked for SVAC or a predecessor company for 37 years and was 59 years old. Harvey had also recently had a health challenge resulting in surgery.   Harvey was concerned about his health benefits and his pre-existing medical condition.   He claims he had a very narrow window within which to make his decision to protect those benefits.   Harvey wrote a letter to Mark Behe, Director of Humans Resources, SVAC, dated March 12, 2007.   In his letter, Harvey notes the announcement of the sale of SVAC to Mahle on January 8, 2007, and his frustration at his inability to make a decision to "either transfer to Mahle, retire from Siemens and work for

Mahle, or just retire."  He stated that no information had been given regarding the conditions of employment at Mahle, including whether his employment would be "substantially comparable" to his employment at SVAC.  His letter also indicates that to protect his retirement plan Harvey intended to make March 31, 2007 his last day and that the process could be cancelled, but his retirement selections had to be made by March 22, 2007.

Harvey testified that he contacted Human Resources to initiate the retirement process and thereafter applied for retirement benefits to take effect on April 1, 2007.  Harvey admits he was on vacation from May 13-23, but his letter included his email and cell phone contact information.  No one contacted him even though his letter was copied to three other people.

On March 28, 2007, Plaintiff Brackett contacted Mark Behe via email concerning Harvey's decision.  (Exh. P-18)  No other information was given to Harvey before he retired.  On his on-line exit interview form, Harvey wrote, "Siemens VDO Automotive made the choice to separate me."  (Exh. P-18)  During his exit interview, Harvey agreed to change his form to state that he voluntarily retired from SVAC.  He initialed the handwritten change.  During this exit interview Harvey made clear his disappointment and dismay at not having sufficient facts to make a fully knowledgeable decision about whether to retire or to wait to

see what offer was made to him by Mahle. Plaintiff Harvey acknowledges that he never made a request for severance pay prior to the date of this lawsuit, December 10, 2008, 20 months after his retirement.

Under the terms of the Severance Plan, § 2.3(c), an employee is not entitled to severance pay if the employee's termination is the result of "employee's retirement..." Section 2.3 provides for an exception where "an employee who is to be terminated due to a Qualifying Event and who elects to retire under a retirement plan of SVAC shall be granted severance pay, nonetheless." Plaintiff Harvey is correct in stating that he had insufficient information to decide among the choices he faced. However, the Defendants were not yet in a position to clarify his options for him. The sale of SVAC to Mahle was not finalized until May 31, 2007. Until that time there was no certainty about the closure of the deal and no definite plan for the transfer of employees. The testimony of the witnesses involved in the sale demonstrates the complicated nature of Mahle wanting all the SVAC assets, and resources available and the strained financial picture. While Plaintiff Brackett in hindsight testifies to the clarity of the deal, many loose ends still existed at the time of Plaintiff Harvey's retirement. Among the choices, Plaintiff Harvey chose to retire voluntarily. The evidence just does not support the exception he claims; that he was to be terminated due to a qualifying event and therefore is entitled to severance. As

noted previously, the Plan provides that it is the new employer who makes the offer of substantially comparable employment "immediately following the divestiture." There is no requirement under the Plan that an eligible employee must have advance information prior to any divestiture as to the new employer's terms of the offer. The Court finds in favor of Defendants and against Plaintiff Harvey on his claim for severance benefits because Harvey chose to retire before any employment offer was made by Mahle.

### F. Whether ERISA was Violated or any Fiduciary Duty Breached

SVAC did not violate ERISA either by not paying severance pay under the Severance Pay Plan, nor by breaching any fiduciary duty required by ERISA. There is no dispute that the SVAC Severance Pay Plan is a beneficiary plan under ERISA. Beneficiaries under such a plan are entitled to bring an action in federal court to recover benefits due under the plan. 29 U.S.C. § 1132(a)(1)(B). Federal courts apply federal common law governing contracts to plans under ERISA. *Perez v Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998); *Pitcher v. Principal Mutual Life Ins. Co.*, 93 F.3d 407, 411 (7th Cir. 1996). Courts must interpret a plan's provision according to the plain meaning of the plan in the ordinary and popular sense. *Regents of the University of Michigan v. Agency Rent-A-Car*, 122 F.3d 336, 339 (6th Cir. 1997). Unambiguous terms must be given their effect. And a court is not allowed

to re-write a plan under the guise of judicial interpretation. *Perez, supra*. Usually the court gives deference to the interpretation of the contract by the plan administrator, but this deference is only owed where there is some ambiguity. In instances where the plan administrator, the ultimate decision maker, has a conflict of interest, the court may consider that conflict as an additional factor when reviewing a decision to deny benefits. *Firestone Tire and Rubber, Co. v Bruch*, 489 U.S. 101, 115 (1989). A conflict arises when the entity that administers the plan also determines whether benefits are paid and is the same entity that pays the benefits from its pocket. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112-13 (2008). In this case it is clear that SVAC has such a conflict and the court considers that in deciding whether SVAC properly denied severance pay to these Plaintiffs.

A plan administrator under ERISA must discharge its duties solely in the interest of the plan participants and beneficiaries. 29 U.S.C. §1104(a)(1); *Glenn, supra*. A conflict of interest is weighed differently if it appears the conflict played a greater role in the decision making; but will have less significance in those cases where steps were taken by the plan administrator to protect against such conflict. *Glenn, supra*. In a case where there are inconsistent positions taken in the decision-making process, a conflict of interest is given greater weight. See, *Killiam v. Health Source Provident Administrators*, 152 F.3d 514 (6th Cir. 1998).

Under ERISA, a plan administrator must fairly address an employee's claim for benefits. A decision to deny benefits must be in writing and give specific reasons for the denial under 29 U.S.C. § 1133. There must also be a reasonable opportunity for review of the decision denying the claim. *Id.* 29 C.F.R. Sec 2560.503-1(g) requires written notice of a benefit decision including, in the case of a denial, specific reasons for the denial, citing the specific plan provision and a description of the review procedure. Under 29 C.F.R. 2560.503-1(1), the remedy for failure to establish and follow plan procedures is that the procedural process is deemed exhausted.

SVAC's administration of the Severance Plan was at best spotty. It is unclear whether the ERISA Committee existed or was administrating the Plan. It is unclear whether Fredrick Roth was the decision maker in administrating the Plan and Plaintiffs claim that Roth deemed the denial of severance a "business decision" inferring that the Plan Administrator did not apply the Plan in the interest of the participants.

Defendants argue, as Plaintiffs expect, that: the plan required Plaintiffs to make a claim for severance; that no Plaintiff made a claim for benefits; that no Plaintiff complained that their offers from Mahle were not for substantially comparable work and benefits; that the Plaintiffs waited too late to pursue their

claims for severance; that Plaintiffs failed to exhaust their administrative remedies; and, that the process for claims for severance and the review process are all included in the Severance Pay Plan available to the Plaintiffs. There is testimony that a meeting was held with the Plaintiffs at SVAC where Frederick Roth, General Counsel, explained the decision to deny severance benefits and distributed copies of the Severance Plan which outlines the appeal/review process. It is not clear whether Roth made the decision to deny benefits (which two of Defendants' witnesses claim) or the decision came from Siemens AG, the parent company, also involved in the sale.

The failure of SVAC to adequately address the claims for severance under ERISA ultimately goes to whether SVAC fulfilled its fiduciary duty to apply the plan for the benefit of the participants and to whether the decision to deny severance benefits was arbitrary and capricious. The denial of ERISA benefits is generally reviewed *de novo*. But if the plan administrator has discretionary authority to determine eligibility for benefits, the denial of benefits is reviewed under the arbitrary and capricious standard of review. The Court has already noted how it must also consider any conflict of interest.

The Severance Pay Plan at SVAC provides that the Severance Pay Plan Committee, comprised of three members appointed by the Plan Sponsor, has the sole

right and authority to determine eligibility for benefits under the Plan. An appeal may be taken if a claim is denied and the appeal must be in writing. Notice of the decision on Appeal must be given to the employee. There is no dispute that under these circumstances, the arbitrary and capricious standard applies.

Under the arbitrary and capricious standard, a district court must uphold the benefit determination if it is "rational in light of the plan's provisions." *Jones v Metropolitan Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004). If there is a reasonable explanation based on the evidence for the particular outcome, that outcome is not arbitrary and capricious. *Darland v Fortis Benefits, Ins. Co.*, 317 F.3d 516, 527 (6th Cir. 2003). Usually under *Perez*, SVAC would make that determination. So, here, SVAC having not followed the procedure outlined in its Plan and the Plaintiffs having been excused of exhausting their administrative remedies (as Defendants note they had no opportunity before the lawsuit to determine whether the Plaintiffs qualified under the Plan or whether the work they were offered at Mahle was comparable work), it falls to the court to make that determination applying the federal law of contracts and ERISA.

The Court, applying the arbitrary and capricious standard of review finds that an asset of SVAC, however small, was sold during the acquisition by Mahle, eliminating Plaintiffs from recovery of severance pay under the Severance Pay Plan,

§ 2.3(d).   The Court further finds that the Plaintiffs were offered substantially comparable employment with the new company, Mahle, immediately following the sale.   The Court finds that in the course of preparing for the sale, a number of scenarios and contingencies were considered, including, what employees would be brought in Mahle and funds set aside to cover issues like those that have arisen in this lawsuit. The Court is not bound by any testimony that SVAC thought benefits should be paid, as they did not pay them, and the Court must rely on the contractual language of the Plan and the facts regarding the sale and SVAC's participation in it. As the Court find no violation of ERISA in the context of the Severance Pay Plan, no benefits are awarded.   The Severance Pay Plan Committee's denial of severance pay to Plaintiffs, even though such denial was not in writing, was not an arbitrary nor capricious decision.

## IV.   PLAINTIFFS' MOTION TO STRIKE AND EXCLUDE TESTIMONY

Plaintiffs seek to strike and exclude the testimony of defense witness Gary Fell as a substantive fact witness.   Plaintiffs claim Defendants never listed Fell as a witness in any pre-trial witness lists.   Defendants listed Fell as a possible "Records Custodian" in the Joint Final Pre-Trial Order.   Plaintiffs assert that Fell's testimony went beyond that of a "Record Custodian."   Plaintiffs further assert that through Fell, Defendants presented proposed documents which Defendants never disclosed

to Plaintiffs prior to trial, contained in Defendants' Proposed Exhibit 25, and marked separately as Defendants' Proposed Exhibits 28, 29, 30a, 30b, 31, 32 and 33. Plaintiffs seek to strike Fell's testimony and these exhibits.

Defendants claim that Fell was listed as a "will call" witness, therefore there is no "surprise" that he would be called at trial. Defendants assert that Fell's testimony is relevant to the "surprise" testimony of Brackett and Caroline Harvey. Defendants argue that Fell's testimony generally was to authenticate SVAC's documents maintained in the ordinary course of business.

The issue of what assets were sold to Mahle was central to the summary judgment motion ruled on by the Court and at trial. Any document related to the sale was relevant and should have been provided during discovery. The actions or inaction taken by the parties during discovery will not now be litigated. However, because identifying Fell as "Custodian of Records" and not listing the documents in Proposed Exhibit 25 and other related documents in the Joint Final Pretrial Order support Plaintiffs' claim that Fell went beyond the "Custodian of Records" role in his testimony by identifying documents which were not produced during discovery. Even if these documents were used to "impeach" the "surprise" testimony of Brackett and C. Harvey, these documents should have been produced during discovery. The Court grants Plaintiffs' motion. The Court has not considered

Fell's testimony and the documents identified by Fell during trial which were not produced during trial.

## V.  CONCLUSION/ORDER

Based on the findings of fact and conclusions of law set forth above, the Court finds Plaintiffs have not carried their burden that Defendants' decision in denying Plaintiffs severance pay under the Severance Plan was arbitrary and capricious. The Court finds in favor of Defendants and against Plaintiffs of no cause of action.

Accordingly,

IT IS ORDERED that this action is DISMISSED with prejudice against Plaintiffs STEVE BRACKETT, KEVIN MURPHY, DARIUSZ KEPCZYNSKI and BRUCE HARVEY.

IT IS FURTHER ORDERED that the Motion to Strike and Exclude Gary Fell's Testimony and Defendants' Exhibit 25 (DE #44) is GRANTED as it relates to Defendants' Exhibit 25 and related documents.

IT IS FURTHER ORDERED that a Judgment be entered in favor of Defendants Siemens VDO Automotive Corporation (now known as Continental Automotive Systems US, Inc.) and Siemens VDO Corporation and against Plaintiffs Steve Brackett, Kevin Murphy, Dariusz Kepczynski and Bruce Harvey.

IT IS FURTHER ORDERED that this action is designated as CLOSED on

the Court's docket.

S/Denise Page Hood
DENISE PAGE HOOD
Chief United States District Judge

DATED:   May 15, 2019

I hereby certify that a copy of the foregoing document was served upon counsel of record or party on May 15, 2019, by electronic and/or ordinary mail.

S/Kim Grimes
Case Manager Supervisor